[No. 22341.   Department Two.   June 25, 1930.]

W. B. GILBERT, *Appellant,* v. J. O. SOLBERG *et al., Respondents.*

W. M. MARTIN *et al., Appellants,* v. J. O. SOLBERG *et al., Respondents.*[1]

*U. D. Gnagey,* for appellants.

*Ellis & Evans,* for respondents.

HOLCOMB, J.—These two actions were consolidated for the purpose of trial and appeal. In one action, appellant Gilbert sues for damages for injury to his automobile. In the other action, appellants Martin

[1]Reported in 289 Pac. 1003.

and wife sue for damages for personal injuries, all arising out of the same collision.

At the close of appellants' evidence, the trial court denied respondent's motion for a nonsuit, but, after the close of all the testimony in the case, it granted respondent's motion for a directed verdict. Appellants unsuccessfully moved for a new trial, and judgments were entered on the directed verdicts in favor of respondents. From these judgments, these appeals arise.

The trial court granted the motions for directed verdicts on the ground of the contributory negligence of appellants. It therefore becomes necessary to examine the evidence introduced on behalf of appellants as the same might be viewed by reasonable minds and in accordance with that most favorable to appellants.

Respondent contends that he was not guilty of any negligence proximately causing the injury, and that appellants were guilty of contributory negligence as a matter of law. In presenting these questions, however, respondent recites some evidence on his own behalf which the jury were entitled to disregard when the evidence was conflicting.

The evidence on behalf of appellants showed this state of affairs:

Appellant Gilbert was driving his own automobile northerly from Seattle to Bellingham on the Pacific highway on February 14, 1926, between seven and eight o'clock in the evening. The night was very dark, and it was raining in torrents. With appellant were the other appellants, W. M. Martin and his wife. Gilbert was driving with Mrs. Martin on the front seat and Mr. Martin on the rear seat. About three miles north of Stanwood, after rounding a sharp curve, they crashed into respondent's 1917 Ford car, parked on the Pacific highway on the right-hand side of the road

and at least twenty inches on the pavement. It, also, was headed north, and if it had any rear light, it was very dim. It was parked within sixty feet of the south end of the curve.

Two cars approached appellants, coming from the opposite direction, the lights of which tended to blind and confuse him, and he kept very close to the edge of the pavement in order to give the cars room to pass without trouble. These two cars passed almost opposite the Ford, one of them between the Ford and where appellant drove around the end of the curve, about sixty feet from the Ford. Getting out of his car, after the accident, Gilbert went back to the Ford, which had been shoved into, or astraddle of, the ditch at the right side of the road, and found the Ford empty and the engine slightly running. The lights were dim. Respondent came running up with a lantern in his hand, and went to his car and started the engine up quite speedy, so as to get the lights to shine better than they did before. The engine running low made his lights quite dim and not distinguishable; if the tail light was burning, it was so dim appellant did not notice it.

On cross-examination, respondent brought out from Gilbert that his head lights did not throw light to the distance of 150 feet, as required by law, and probably did not throw a light to a greater distance than 75 feet. Appellant W. M. Martin testified that, when appellant's car passed around the end of the curve, he saw respondent's car a distance of about sixty feet away; that they were almost upon the car when he saw it. Mrs. Martin corroborated that testimony. Gilbert testified that, on account of the rain and the difficulty in seeing ahead, and the confusion caused by approaching lights, he was driving at not to exceed twenty-five miles per hour, and Mr. Martin thought it

might have been less than twenty-five miles per hour. The force of the collision was such that appellant Gilbert and Mrs. Martin, who sat on the front seat with him, were both thrown entirely out of the car. Martin was thrown into the front seat and on to the steering wheel. Appellant Gilbert's car was damaged substantially, and appellants Martin both received some personal injuries.

Respondent attempted to excuse the stopping of his Ford car where he did, as follows: He was driving in search of the residence of one Dale, which was about four miles south from Stanwood on the left-hand side of the road looking north. Although he had been over the road before, he was not well acquainted in that locality. On the left-hand side of the road, the ground falls away in a steep bank. On the right is a ditch about three feet distant from the pavement. Shortly before reaching the point where respondent stopped his car, the road makes a sharp curve. Rounding this curve, he saw the lights of two houses, one of which he thought might be Dale's. He stopped to investigate. He drove off to his right side of the road as far as he thought he could without going into the ditch, and left the engine running so that his head lights and tail light would be burning. He testified that they were still burning when he reached the car after the accident, and that his tail light was ordinarily visible at least four hundred feet (but those were disputed facts). He testified that the two left-hand wheels of his car were about twenty inches on the pavement, the right-hand wheels off the pavement. He said he could see no other place where he could get entirely off the pavement. He was not sufficiently acquainted in that locality to know how far he would have to go to find such a place. He went across the pavement toward the first light, saw immediately that it was not the

place he was looking for, turned back and had just stepped on to the pavement across from his car when he saw Gilbert's car coming at not less than forty miles and he judged about forty-five miles an hour—which also was a disputed fact.

The rebuttal evidence of appellants was to the effect that, on the opposite side of the road from where respondent parked his car, one could park a car off the pavement for about two hundred feet; and on the same side of the road, there was a garage nearby where he could have parked his car.

Appellants rely upon that provision in the statute then in force, Rem. Comp. Stat., § 6347, which reads:

"It shall be unlawful for any person to leave any vehicle standing upon the main traveled portion of any highway of this state: Provided, that this provision shall not apply to any vehicle so disabled as to prohibit the moving of the same. And it shall be unlawful for any person to leave any disabled vehicle standing on any traveled portion of any highway of this state . . . without having a red light displayed on the rear end of such vehicle at the side thereof nearest the center of the highway."

Asserting, then, the well-settled rule that the violation of a positive law is negligence *per se* (*Sundstrom v. Puget Sound Traction, Light & Power Co.*, 90 Wash. 640, 156 Pac. 828), unless, as held in that case, there are exculpatory circumstances amounting to necessity, appellants contend that the negligence of respondent in stopping his car where he did, under the existing conditions, renders respondent liable for the injuries. Appellants concede that this court has excused compliance with the first part of that statute under certain circumstances (*Colvin v. Auto Interurban Co.*, 132 Wash. 591, 232 Pac. 365). It is then asserted that the only exception the statute makes is in favor of disabled vehicles, and in case of disabled ve-

hicles, the last part of the law must be complied with, which was not complied with by respondent.

Respondent's vehicle was not disabled and the last part of that statute has no application. The only part applicable is that part making it unlawful for any person to leave any vehicle standing upon the main traveled portion of any highway. That was done by respondent without apparent necessity, as an undisputed fact, constituting negligence *per se*. There were also other factors constituting actual negligence on the part of respondent, under the showing made by appellants, in stopping his car on the sharp curve at a place where it could not be seen more than sixty feet from the beginning of the curve; in stopping it at a place where he could not get it entirely off the pavement; and in stopping it there during a very dark night and a very heavy rain storm without knowing positively that his rear light would show a sufficient distance to be discerned. As a matter of fact, under the evidence on behalf of appellants, which was for the jury, his rear light could not have been seen more than sixty feet back to the end of the curve, in any event.

It is clear that there is sufficient evidence of negligence on the part of respondent to go to the jury in both cases.

■ Respondent contends that appellants were guilty of contributory negligence in driving with grossly inadequate headlights.

He relies upon Rem. Comp. Stat., § 6334, prescribing, in substance, that every motor vehicle being driven upon the public highways during the period from one-half hour after sunset to one-half hour before sunrise, and at all times when fog or other atmospheric conditions render the operation of such vehicle dangerous to traffic or the use of the highways, shall exhibit at least two head lights, one on each side

of the vehicle, showing white or yellow tinted lights visible at least five hundred feet or more in advance of said vehicle; and that such lights shall be so designed, deflected or arranged as to deflect or diffuse the light and produce sufficient light to reveal objects at least one hundred fifty feet ahead of the vehicle on which such lights are installed.

Respondent argues that, while this statute is somewhat involved, its clear purpose is to require head lights visible from in front by others than the driver or occupant of the vehicle five hundred feet or more, and be so arranged as to render objects in front of the driver of that vehicle visible to him for one hundred fifty feet or more.

We have no doubt that appellants' construction of the meaning of this statute is correct. "This alone, however, will not preclude a recovery." *Twedt v. Seattle Taxicab Co.,* 121 Wash. 562, 210 Pac. 20. Noncompliance with those requirements of the statute does not conclusively establish the negligence of appellants as the proximate cause of the injuries, under the evidence adduced by appellants.

Respondent argues that, since appellant Gilbert admitted that the lights on his car would not throw a light ahead on a rainy night for more than seventy-five feet, he was guilty of a violation of the statute above cited which would be negligence *per se* under our decisions, and he is guilty of such contributory negligence thereby that appellants cannot recover. This contention entirely disregards the fact that the evidence on behalf of appellants was that respondent's car was parked sixty feet from the end of the curve, and that appellants could not obtain any view of respondent's car until appellants' car had somewhat straightened out in line with respondent's car, which was parked sixty feet from the end of the

curve. Appellant Gilbert was driving at twenty-five miles an hour, or less, which rate of speed would be five or more miles per hour less than the statutory rate of speed at that time. When he got around the end of the curve and slightly straightened in line with respondent's car, he was so close to it that he could not stop. He was obliged to keep to the right side of the pavement in order to avoid the two cars approaching him from the other direction. He was watching the edge of the pavement, keeping close to it and driving well within the lawful limit.

He had a right to consider that the pavement would not be obstructed by another driver parking on it, or partly on it. *McMoran v. Associated Oil Co.,* 144 Wash. 276, 257 Pac. 846. He would especially have the right to believe that no one would park his car on, or partly on, the pavement, within sixty feet of the end of a sharp curve, so that it could not be seen farther than that by cars coming around the curve from the same direction. *Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588. If those purported facts be resolved in favor of appellants, and their failure to have lawful head lights did not contribute to the accident in any material degree, the responsibility lies with respondent and appellants may recover. *Twedt v. Seattle Taxicab Co., supra.*

Much of the reasoning in our decision in *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, seems very apt here:

"One driving at night has at least some right to assume that the road ahead of him is safe for travel, unless dangers therein are indicated by the presence of red lights; . . . that visibility is different in different atmospheres and that at one time an object may appear to be one hundred feet away, while at another time it will seem to be but half that distance; . . . the law imposes the duty on all autos travel-

ing at night to carry a red rear light and the duty on all persons who place obstructions on the road to give warning by red lights or otherwise; . . . to take into consideration the glaring headlights of others and the density of the traffic, and other like things which may require the instant attention of the driver; . . . to take into consideration that a driver at night is looking for a red light to warn him of danger and not for a dark and unlighted auto, or other obstruction in the road.''

We consider the cases cited and relied upon by respondent upon these questions inapt.

''Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury.'' *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119.

See, also, *Embody v. Cox, ante* p. 464, 289 Pac. 44.

Under the evidence as presented by appellants in this case, we are convinced that the facts, both as to negligence on the part of respondent and contributory negligence on the part of appellant Gilbert, did not conclusively establish contributory negligence on the part of appellant or lack of negligence on the part of respondent, and should have been submitted to the jury for determination.

The judgments are therefore reversed and the cause remanded for a new trial.

MITCHELL, C. J., FRENCH, MAIN, and FULLERTON, JJ., concur.