[No. 1471-1. Division One. September 24, 1973.]

LAURA ZOOK, *Respondent,* v. D. MICHAEL BAIER *et al.,*
*Appellants.*

*Lane, Powell, Moss & Miller* and *David C. Lycette,* for appellants.

*Wolfston, Panchot & Bloch* and *J. Porter Kelley,* for respondent.

CALLOW, J.—The plaintiff, Laura Zook, was walking facing traffic on a 2-lane road when she was struck by a vehicle driven by the defendant Michael Baier. The driver of the vehicle appeals from a jury verdict in the sum of $40,000 for the plaintiff.

The defendants contest the failure of the trial court to find that the plaintiff was contributorially negligent as a matter of law, in failing to grant certain motions made during the trial, in failing to give proposed instructions, in giving certain instructions, in allowing testimony of a witness regarding the speed of the automobile, in excluding exhibits offered by the defendant and in failing to limit damages to $15,000, the policy limit of the liability insurance of the defendants, the additional amount of the judgment being claimed to have been discharged in bankruptcy.

It was snowing heavily and still dark in the early morning of December 31, 1968. Compacted and slippery snow covered the roadway so no pavement markings were visible. The snow was about one foot deep on the shoulders of the road where it had not been compacted. The plaintiff was on her way to work when her automobile stalled approximately 500 feet from the intersection known as "Thrasher's Corner" in Snohomish County. When she was unable to start her car, she walked back toward a service station at this corner. As she walked south on the east side

of the road facing the northbound traffic, she could see the snow accumulating on the windshields of the oncoming vehicles. She had no recollection of the impact of the car, but only that when she regained consciousness, she was lying in the snow on the west side of the road. The defendant testified that as he proceeded north from Thrasher's Corner at approximately 20 m.p.h., he saw the plaintiff when he was 35 feet from her, applied his brakes and tried to turn away but slid into her.

The chronology concerning the accident, the litigation and the bankruptcy of the defendants is as follows:

| | |
|---|---|
| December 31, 1968 | The date of the accident. |
| April 21, 1970 | The defendants file a petition in and are adjudicated bankrupt. |
| August 26, 1970 | The plaintiff files her complaint. |
| September 15, 1970 | The plaintiff is given notification of the bankruptcy and requested to file a claim. The last day for filing a claim is stated as November 14, 1970. |
| September 30, 1970 | An amended schedule A3 is filed in the bankruptcy setting forth the plaintiff as a creditor and the amount of her claim. |
| October 13, 1970 | An order is entered in the bankruptcy discharging provable debts. |
| November 2, 1971 | Trial of the personal injury claim commences. |
| November 5, 1971 | The trial is completed. |
| November 12, 1971 | Hearing on the defendants' motions for judgment n.o.v. or for a new trial and to reduce the verdict from $40,000 to $15,000. |
| December 30, 1971 | Order entered in the bankruptcy finding that at the time of the filing of the petition in bankruptcy, no law suit had been filed on the negligence claim of the plaintiff against |

January 12, 1973
the bankrupts, that the negligence suit was filed thereafter, and that under 11 U.S.C. § 103A(7) the claim of the plaintiff was not a provable debt dischargeable in the bankruptcy. . The defendants' motions of November 12, 1971, denied and judgment entered for $40,000.

We turn to a discussion of the issues raised on the appeal.

CONTRIBUTORY NEGLIGENCE AS A MATTER OF LAW

The defendant claims that the plaintiff was on the traveled portion of the roadway at the time of the accident and therefor contributorially negligent as a matter of law. The defendant submits that the refusal to direct a verdict for the defense is contrary to the statutory rules set forth in RCW 46.61.240(1) as follows:

(1) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

and RCW 46.61.250(2):

' (2) Where sidewalks are not provided any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction and upon meeting an oncoming vehicle shall step clear of the roadway.

The record reveals sharply conflicting testimony as to the exact location of the plaintiff when she was struck. The testimony of the defendant would place her near the center of the roadway while the testimony of the plaintiff would place her on the east side of the compacted snow walking south facing oncoming northbound traffic. The physical evidence shows that the plaintiff was struck by the center of the defendant's car, and her body came to rest partly on the shoulder and partly on the roadway on the west side of the highway approximately five feet directly in

front of where the defendant's car stopped after the impact partially in the area of the southbound lane. The testimony was conflicting to the extent that it could not be said as a matter of law that the plaintiff was at a place where she was actually in violation of either statute. Contributory negligence can be determined as a matter of law only when:

(1) Where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law and are the same under all circumstances; (2) where the facts are undisputed and but one reasonable inference can be drawn from them.

*Chadwick v. Ek*, 1 Wn.2d 117, 127, 95 P.2d 398 (1939). With this conflict in the evidence present, the issue of contributory negligence was for the jury. *Discargar v. Seattle*, 25 Wn.2d 306, 310, 171 P.2d 205 (1946).

■ The weather conditions at the time of the accident make the words of RCW 46.61.250(2) "when practicable" particularly applicable to this case. The exhibits disclose that the east shoulder of the road at the scene of the accident was narrow and sloped steeply into a ditch; while on the west side, the shoulder was broad at the place of impact. However, the west-side shoulder did vary in passability, being too narrow at certain places; and at one place near the accident site, the shoulder was constricted by a guardrail close to the surfaced highway. It was not practicable for the plaintiff to walk only on the shoulder on the left side of the road in the snow under these conditions. Her conduct did not violate specifically RCW 46.61.250(2) making her contributorially negligent as a matter of law. As said in *Stutz v. Moody*, 3 Wn. App. 457, 459, 476 P.2d 548 (1970):

We do not agree with defendant's contention that subsection (2) creates a mandatory requirement that pedestrians must walk on the left side of the roadway or its shoulder facing oncoming traffic under all circumstances. The words "when practicable" lead us to conclude that the legislature envisioned circumstances where it might

be more dangerous to walk on the left side of the highway facing oncoming traffic.

Whether it was practicable to walk only on the left side of the road facing oncoming traffic is a question of fact to be decided by the trier of fact. There was substantial evidence and inferences from the evidence from which the trial court could logically determine that under the circumstances of this case it would not be practicable to walk on the left side of the highway facing the oncoming traffic.

Further, the darkness and weather conditions were exculpatory circumstances amounting to a necessity which removed any literal violation, if it is so viewed, of statutory law by the plaintiff from the realm of negligence per se. *Martin v. Leslie*, 345 Mich. 305, 76 N.W.2d 71 (1956); *Discargar v. Seattle, supra*; *Gilbert v. Solberg*, 157 Wash. 490, 494, 289 P. 1003 (1930); *Hood v. Williamson*, 7 Wn. App. 355, 362, 499 P.2d 68 (1972).

The authorities cited by the appellant involved violations of statute apparent under the evidence. The trial court was correct in declining to direct a verdict based on both the conflicts in the testimony and on the ground that it would have been impracticable to obey the literal statutory mandate.

### SUDDEN EMERGENCY

The defendant requested an instruction in the wording of WPI 12.02, 6 Wash. Prac. 82 (1967) on the duty of a person suddenly confronted by an emergency. The instruction correctly was refused. The position of the defendant is that this instruction on the emergency doctrine should have been given because the jury could have believed the defendant was confronted with an emergency resulting from no negligence of his own and he exercised the care a prudent person would have exercised under the circumstances.

The essential element to invoke the emergency doctrine is confrontation by a sudden peril requiring instinctive reaction. *Seholm v. Hamilton*, 69 Wn.2d 604, 419 P.2d 328 (1966). The rule is applicable only after a person has been placed in a position of peril and there is a choice between courses of action after the peril has arisen. *Sand-*

*berg v. Spoelstra*, 46 Wn.2d 776, 285 P.2d 564 (1955); Restatement (Second) of Torts § 296 (1965). An instruction on sudden emergency is appropriate when the emergency is not brought about, in whole or in part, by the negligence of the party seeking to invoke the doctrine. *Tobias v. Rainwater*, 71 Wn.2d 845, 431 P.2d 156 (1967); *Lee v. Cotten Bros.*, 1 Wn. App. 202, 460 P.2d 694 (1969); W. Prosser, *Torts* § 33 (3d ed. 1964).

Past decisions have taken a different approach than that suggested by the defendant. They hold that when there is evidence that indicates that the sudden emergency came about because of the party seeking to excuse his acts *after* the confrontation with the emergency, that party may not do so when his own failure to foresee the danger permitted the emergency to occur. In situations of obscured vision where sudden confrontations with peril are to be anticipated and there is evidence which indicates that the party claiming a sudden emergency was responsible for it, the doctrine is inappropriate. *Mills v. Park*, 67 Wn.2d 717, 409 P.2d 646 (1966); *Hinkel v. Weyerhaeuser Co.*, 6 Wn. App. 548, 494 P.2d 1008 (1972).

Further, the doctrine was inappropriate from another aspect under the evidence in this case. The doctrine excuses an unfortunate human choice of action that would be subject to criticism as negligent were it not that the party was suddenly faced with a situation which gave him no time to reflect upon which choice was the best. When, as here, there were not alternatives available but only an instant of time on a slippery road for a single instinctive reaction, an emergency doctrine instruction was doubly improper. *Howard v. Ringsby Truck Lines, Inc.*, 2 Utah 2d 65, 269 P.2d 295 (1954); *Johnson v. Barnes*, 55 Wn.2d 785, 350 P.2d 471 (1960); Annot., 80 A.L.R.2d 5 (1961).

## Unavoidable Accident

██ The trial court declined to give an instruction on unavoidable accident. The landmark case of *Cooper v. Pay-N-Save Drugs, Inc.*, 59 Wn.2d 829, 835, 371 P.2d 43 (1962), held:

it is proper to give the instruction if there is affirmative evidence that an unavoidable accident occurred; stated negatively, it is error to give the instruction if there is no evidence of an unavoidable accident or if the only issue possible under the facts is that of negligence and contributory negligence.

Thus, the trial court must examine the evidence; and, if it indicates that the cause of the accident was negligence rather than happenstance, then the issue concerns how the accident was avoidable by the exercise of prudence, foresight and caution and the instruction can be refused. *Jackson v. Seattle*, 15 Wn.2d 505, 513, 131 P.2d 172 (1942). When the evidence would support a jury finding that there was no negligence on the part of either party, the instruction can be properly given. *Flaks v. McCurdy*, 64 Wn.2d 49, 390 P.2d 545 (1964); Annot., 65 A.L.R.2d 12 (1959).

The danger that exists if an instruction on "unavoidable accident" is given is that it interposes as the supposition or concept of the trial court that neither party was at fault. This is an improper intrusion into the jury function to be avoided when there is evidence that the injury was caused by one or both parties acting with a lack of due care. When the evidence indicates that either or both failed to exercise their volition according to the requirements of due care, then people were at fault—not luck, chance or an act of God. When the evidence on the issue is in that posture, an unavoidable accident instruction may be refused as injecting confusion rather than enlightenment. *Zenith Transp., Ltd. v. Bellingham Nat'l Bank*, 64 Wn.2d 967, 395 P.2d 498 (1964); *Van Ry v. Montgomery*, 58 Wn.2d 46, 360 P.2d 573 (1961); *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 162, 134 P. 934 (1913); W. Prosser, *Torts* § 29 (3d ed. 1964); 57 Am. Jur. 2d *Negligence* §§ 16-19 (1971).

In *Flaks* and *Bennett v. McCready*, 57 Wn.2d 317, 356 P.2d 712 (1960), "unavoidable accident" instructions were approved when given in situations involving snow and slippery roads. However, in both of those cases, there was evidence that neither party was at fault and that the defendants were surprised by sudden changes of circumstances

which were other than reasonably should have been anticipated. The distinction is sufficient to permit the instruction to have been refused in the discretion of the trial court. *Flaks v. McCurdy, supra; Carraway v. Johnson*, 63 Wn.2d 212, 386 P.2d 420 (1963).

## VOLENTI NON FIT INJURIA

■ The defendant asked for an instruction stating that when a person voluntarily places herself in a position of peril which she appreciates she assumes the risks thereof. This instruction was requested on the ground that the plaintiff walked on the traveled roadway and knew of the potential dangers of such conduct. The issue raises the maxim of volenti non fit injuria discussed in *Wood v. Postelthwaite*, 6 Wn. App. 885, 890, 496 P.2d 988 (1972). Volenti non fit injuria is applicable when there is a voluntary exposure to a known and appreciated unreasonable risk. *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 440 P.2d 834 (1968). In order that the assumption of a risk bar an injured person from recovery, the injured plaintiff must have had a reasonable opportunity to act differently or proceed on an alternate course that would have avoided the danger. *Collins v. Boeing Co.*, 4 Wn. App. 705, 483 P.2d 1282, 46 A.L.R.3d 1294 (1971). The circumstances that existed in this case channeled the course of the plaintiff and left her without a feasible alternate safe by comparison to the path she took. *Beck v. Dutra*, 129 Vt. 615, 285 A.2d 732 (1971); *Kingwell v. Hart*, 45 Wn.2d 401, 275 P.2d 431 (1954); 57 Am. Jur. 2d *Negligence* § 283 (1971); 2 Restatement (Second) of Torts § 496E (1965). There was not an evidentiary basis on which the jury could conclude that the plaintiff voluntarily assented to the risk. She had no other way to go to seek assistance. It was not error to refuse an instruction on the defense.

## INSTRUCTIONS ON PEDESTRIAN'S DUTY

■ The trial court declined to instruct pursuant to requested instructions in the form of WPI 70.01, 6 Wash. Prac. 243 (1967), regarding the duty of persons to exercise ordinary care to avoid danger and a collision and another

instruction which would have told the jury that when a pedestrian is on a highway outside a crosswalk he has the duty to maintain a continuous observation and lookout to avoid an accident. The trial court did instruct the jury in the usual form concerning negligence and contributory negligence and further instructed the jury concerning the statutory duty of a pedestrian on a highway when sidewalks are not provided under an instruction which read:

> A statute provided:
> "Where sidewalks are not provided, any pedestrian walking along and, upon a highway shall, when practicable, walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction and upon meeting an oncoming vehicle shall step clear of the roadway."

The trial court also instructed the jury:

> A statute provides:
> "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, shall yield the right-of-way to all vehicles upon the roadway."

These instructions were based upon RCW 46.61.240 and 46.61.250. The court further informed the jury:

> One is charged with the duty of seeing that which he would have seen had he been exercising ordinary care.

The defendant was able to and did argue his theory of the case under these instructions stating that the plaintiff was in the best position to see what there was to be seen. It was not error to refuse a proposed instruction when the subject was adequately covered by other instructions given by the court. *Tyler v. Tyler,* 65 Wn.2d 102, 395 P.2d 1021, 6 A.L.R.3d 764 (1964); *Rickert v. Geppert,* 64 Wn.2d 350, 391 P.2d 964 (1964).

## RULES OF THE ROAD

The defendant objected to the giving of two instructions the main thrust of which was to inform the jury that a vehicle was to be driven on the right half of the roadway except in certain situations and that a vehicle is to be

driven as nearly as practicable entirely within the single lane and is not to be moved from such lane until the driver has first ascertained that such movement could be made with safety.

The giving of these instructions was pursuant to RCW 46.61.100 and 46.61.140. They are pertinent in that they inform the jury that a pedestrian is entitled to anticipate that oncoming vehicles will be in their appropriate lane of traffic. As stated in *Bearden v. Estate of Chisholm*, 3 Wn. App. 454, 456, 476 P.2d 127 (1970), where a pedestrian was struck apparently on the left side of the traveled portion of the highway by a vehicle in the wrong lane, and the court said:

> Testimony from several of plaintiff's witnesses suggests that the defendant was driving his automobile at least partially on the left side of the center of Trafton Street. If found to be so by the jury, this would establish prima facie negligence, since it is a violation of RCW 46.61.100, none of the exceptions to that statute being here applicable. *Moyer v. Clark*, 75 Wn.2d 800, 454 P.2d 374 (1969). Plaintiff is one of the class of persons to be protected by this statute. If he were struck on the left side of the centerline of Trafton Street, then the negligence of defendant would be a proximate cause of plaintiff's injury. *Kemp v. Leonard*, 70 Wn.2d 643, 424 P.2d 660 (1967); *Rhimer v. Davis*, 126 Wash. 470, 218 P. 193 (1923).

The exceptions enumerated in the first instruction merely pointed up the absence of any statutory reason for the defendant to be anywhere but in the right-hand lane of traffic. The existence of the snow on the roadway blotting out the marked lanes of traffic did not change the requirement that a driver drive "as nearly as practicable entirely within a single lane." These instructions were not misleading and did not prejudice the defendant. *Compare Day v. Goodwin*, 3 Wn. App. 940, 478 P.2d 774 (1970).

SPEED

The defense objects to the giving of an instruction which informed the jury of the state statute which provides that no person shall drive a vehicle at a speed greater than is

reasonable and prudent under the conditions. There was testimony from a witness that the defendant had passed the witness' car approximately 5 to 6 miles prior to the scene of the accident, and that the accident had occurred about 10 minutes after the defendant passed him. This witness testified further that when the defendant passed him he, the witness, was proceeding at 25 m.p.h. while the defendant was traveling 10 to 15 m.p.h. faster. The state trooper testified that a reasonable speed under the circumstances was 20 m.p.h. The trooper also testified that going faster than 20 m.p.h. would mean that the driver would have been over-driving his headlights and not able to stop within the area he could see.

In *Hines v. Foster*, 166 Wash. 165, 6 P.2d 597 (1932), a witness was permitted to testify to the speed of a vehicle though she had little time to observe the speed of the car. This was held to go to the weight but not the admissibility of the testimony, admissibility of evidence being the province of the trial court and its weight for the jury. *See also Larson v. Olson,* 167 Wash. 253, 9 P.2d 68 (1932); 2 J. Wigmore, *Evidence* § 382 (3d ed. 1940).

In *State v. Carlsten*, 17 Wn.2d 573, 136 P.2d 183 (1943), the witness observed the vehicle of the defendant at a point 8½ miles from the point of collision, and the evidence was held admissible and the jury allowed to determine what weight should be attached to it.

 The objection is made that the witness answered in the affirmative to a question which said that his testimony as to speed was a guess on his part. However, on redirect examination, the facts and circumstances of the passing of the witness' vehicle by the defendant's vehicle was made clear. The retention of this testimony as appropriately admissible was within the discretion of the trial judge. A jury question was raised. The instruction as to reasonable speed was properly given.

NONDISCHARGEABILITY IN BANKRUPTCY OF UNFILED NEGLIGENCE ACTION

The position of the defense that the liability of the defend-

ant for his negligence has been discharged in bankruptcy cannot prevail.

█ We are cited to *Taitch v. Lavoy*, 57 Wn.2d 857, 360 P.2d 588 (1961). There the court held that evidence of a discharge and the listing of the debt would raise a presumption of discharge and impose a burden on a creditor to show that such a listed debt was not discharged. However, such a presumption is overcome and cannot exist in this case in view of the uncontested chronology of the actions taken by the parties and the order entered December 30, 1971, in the bankruptcy.

Provable debts are dischargeable in bankruptcy (with the exception of those specifically excepted under 11 U.S.C. § 35) and, conversely, nonprovable debts are not dischargeable. 1A W. Collier, *Bankruptcy* ¶ 17.03 (14th ed. 1972); 9 Am. Jur. 2d *Bankruptcy* § 405 (1963). Under 11 U.S.C. § 103, the right to recover damages in any action for negligence which has been instituted prior to and is pending at the time of the filing of the petition in bankruptcy is provable and such provability is not dependent upon the claim being reduced to judgment. 1A W. Collier, *Bankruptcy* ¶ 17.05 (14th ed. 1972); 9 Am. Jur. 2d *Bankruptcy* § 406 (1963). A bankrupt may not amend his schedule to include an action for negligence which was not instituted prior to and pending at the time of the filing of the petition in bankruptcy and thereby discharge the negligence claim. *In re Coutee*, 460 F.2d 1201 (5th Cir. 1972); *Resolute Ins. Co. v. Underwood*, 230 So. 2d 433 (La. App. 1969). The dischargeability of a personal injury tort claim depends upon whether or not it is provable under 11 U.S.C. § 103 and not a willfully or maliciously inflicted injury under 11 U.S.C. § 35(a)(8). If the negligence action had been instituted prior to and pending at the time of the petition in bankruptcy, it would have been provable (1A W. Collier, *Bankruptcy* ¶ 17.08 (14th ed. 1972)); but since the suit had not been instituted at the time of the filing of the petition in bankruptcy, it is not a provable debt and not subject to discharge in the bankruptcy. *Schall v. Camors*, 251 U.S. 239,

64 L. Ed. 247, 40 S. Ct. 135, 41 Am. Bankr. R. 76 (1920); *Elmore v. Hill*, 345 F. Supp. 1098 (W.D. Va. 1972); *American Road Ins. Co. v. Roux*, 242 So. 2d 95 (La. App. 1970).

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.